**Margaret Fisher KNIGHT, Appellant,**

v.

**OTIS ELEVATOR COMPANY and Hartford Insurance Group and Atwell, Vogel & Sterling, Inc., Appellees,**

v.

**WESTERN ELECTRIC COMPANY, Third-Party Defendant.**

Nos. 78–1244, 78–1245, 78–1246.

United States Court of Appeals, Third Circuit.

Argued Jan. 8, 1979.

Decided March 29, 1979.

Albert M. Hankin, Milford J. Meyer, Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., Charles H. Weidner, Stevens & Lee, Reading, Pa., for appellant.

Thomas O. Malcolm, Michael Nelson Becci, Malcolm & Riley, West Chester, Pa., for appellee, Atwell, Vogel & Sterling, Inc.

Donald J. P. Sweeney, McWilliams, Sweeney & Powell, Philadelphia, Pa., for appellee, Hartford Ins. Group.

Harry A. Short, Jr., Kevin H. Smith, Liebert, Short, FitzPatrick & Lavin, Philadelphia, Pa., for appellee, Otis Elevator Co.

William J. O'Brien, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for third-party defendant Western Elec. Co.

Before SEITZ, Chief Judge, and GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

### I.

This is a products liability case in which the plaintiff alleges she was injured when the door of a freight elevator in her employer's workplace prematurely closed and struck her. The plaintiff instituted an action against Otis Elevator Company, the designer, manufacturer and installer of the elevator; Hartford Insurance Group, which, as the insurer of the premises, had the statutory obligation[1] either to inspect the elevator or to choose a licensed firm to perform such inspections; and Atwell, Vogel & Sterling, Inc., ("AVS"), which had been hired by the Hartford Insurance Group to perform the inspections. The plaintiff's employer, Western Electric Company, was joined as a third-party defendant.

The central thesis of the plaintiff's case was that the freight elevator was in a defective condition because, by reason of improper design, manufacture and installation, the buttons or switches controlling the doors could be activated inadvertently and "they protruded beyond the wall and had no guards to prevent . . . accidental pushing . . . ."[2] She thus claimed liability against Otis on the grounds of strict liability, breach of warranty and negligence and against Hartford and AVS on the grounds of negligence. At the close of the plaintiff's case on liability, defendants' motions for directed verdicts were granted. The plaintiff appeals from the orders directing verdicts for each defendant and also challenges two evidentiary rulings by the district court. The first of these was the district court's refusal to admit evidence against Otis of repairs made to the elevator by Western Electric Company subsequent to the accident. Second, the plaintiff challenges the district court's refusal to allow her expert witness to give an opinion on

whether the elevator was defectively designed. We affirm the order directing verdicts for defendants Hartford Insurance Group and AVS. We also affirm the district court's ruling that excluded testimony of subsequent repairs. We reverse the directed verdict for Otis Elevator Company and we hold that the district court improperly excluded the expert's testimony on defective design.

### II.

On an appeal from a directed verdict for the defendant, we must examine the record in a light most favorable to the plaintiff and "determine whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Denneny v. Siegel,* 407 F.2d 433, 439 (3d Cir. 1969). Because a directed verdict motion deprives a party of jury fact-determination, we have recognized that "it should be granted sparingly and circumspectly." *Patzig v. O'Neil,* 577 F.2d 841, 846 (3d Cir. 1978).

### A. OTIS ELEVATOR COMPANY

The district court gave the following reason for directing verdict for Otis:

". . . [A]s to 402A, the record is absolutely devoid of any competent evidence proving a design defect in the construction of this elevator as originally designed and installed."

The trial judge's conclusion that the record was devoid of competent evidence to establish a design defect depends on whether his ruling precluding certain expert testimony was correct. Thus we must first examine the rulings precluding certain portions of the proffered expert testimony.

#### 1. *Expert Testimony Issue*

■ Knight assigns as error the district court's refusal to permit Emerson Venable to testify as an expert on whether unguarded elevator control buttons constituted a

---

1. 35 P.S. § 1345.

2. Plaintiff's Supplemental Pretrial Memorandum ¶ VI(1)(a) & (b).

design defect. Absent an abuse of discretion, we will not interfere with the district court's decision on an expert's competence to testify. *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.,* 546 F.2d 530, 537 (3d Cir. 1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). We must nevertheless assess the district court's ruling in light of the liberal policy of permitting expert testimony which will "probably aid" the trier of fact. *Id.*

When making his ruling to preclude certain aspects of proffered testimony by Venable, the trial judge commented as follows:

Direct and extended cross-examination regarding the witness' qualifications establish a background in engineering with special reference to chemistry and safety, including machine guarding, toxicology and industrial hygiene.

He has designed machine guards on occasions which he cannot detail, and in at least one instance had designed guard buttons in connection with the operation of a punch press.

While he contends he has been consulted on certain elevator claims, he has been unable to relate any precise details as to the nature of the claims, their time frame, or his personal participation therein.

On the contrary, he has never examined the elevator here in question, has examined no plans or sketches thereof, has not operated or otherwise had any contact with a freight elevator for more than twenty-six years.

He has never designed an elevator or any part thereof, although something of his creation may have been used in the insulation, electrical equipment, relays, or coils of elevators without his knowledge.

His activities as a consulting engineer have primarily and principally involved safety as related to fires, explosions, chemical poisoning, failure of materials, and failure of structural and hydraulic parts.

He is not a design engineer, has had no background or experience in that area, has no specific background or experience with respect to elevators, and no knowledge of this specific elevator.

Accordingly, because of his qualifications in the field of safety and machine guards, and his actual design of certain of such guards, he may testify as to the effect of unguarded elevator control buttons as related to safety, but *because of his lack of expertise as to elevators and elevator design, may not express an opinion as to whether such condition constitutes or constituted a design defect in the construction and installation of said elevator.*

Likewise, because of his lack of familiarity with elevators generally, and this elevator in particular, he may not testify as to the operating sequence of the inner gate and outer doors, the boot on the inner gate, inadequate inspections, and violation of statutory and departmental regulations.

Therefore, as to the five-part offer heretofore detailed, as to all of which the defendants object, it is the ruling of the Court, that, one, as to Item (1), unguarded control buttons, the objection is sustained in part and denied in part.

As to Item (2), operating sequence of inner gate and outer doors, Item (3), defective boot, Item (4), inadequate inspections, Item (5), violation of statutory and departmental regulations, the objection is sustained.

Appellant's Appendix at 611a–614a. (emphasis added).

■ We recognize that the experienced trial judge was confronted with a shotgun approach in that plaintiff's counsel peppered the court with several contentions as to areas in which Venable's testimony was admissible. The trial judge tried valiantly to sort out these issues, and we conclude his rulings were correct as to all aspects except one. That one error, however, requires a reversal. When he ruled that Venable could not express an opinion on whether "unguarded elevator control buttons . . constituted a design defect in the construction and installation of said elevator" *Id.* at

613a, the trial judge invaded the arena reserved exclusively for the fact finder and thus he erred. While the ultimate fact finders—the jury—could decide that Venable's testimony was not credible and therefore attach no weight to it, this aspect of credibility was nevertheless within the exclusive province of the jury.

From Venable's testimony it appears that he was a consulting chemist and engineer specializing in materials engineering and safety. Since 1947, he has been a registered engineer in Pennsylvania, having studied physics at Carnegie Institute of Technology and safety engineering at the University of Pittsburgh. He later taught a course at the University of Pittsburgh's engineering school, one of the topics of which was "machine guarding." We note further his testimony that his interests were in the guarding and safety elements of machinery, that he had designed safety equipment from 1933 to 1951 and that he had been retained by manufacturers of machinery and had been involved in many investigations of problems on guarding machines. He has designed button guards to prevent inadvertent activation of machinery.

The district court refused to allow Venable to testify as an expert on whether unguarded elevator control buttons were a design defect because it believed that such testimony would require some background in the design and manufacture of elevators. We disagree.

Candidly, we are concerned with an increasing number of trial court rulings which seem to require an expert in a products liability case to be intimately familiar with all aspects of the total machine rather than the particular part in issue. An expert on tires need not be knowledgeable about automobile carburetors and roofs where the claim is a defective tire. Similarly a purported expert on the guarding of buttons need not be a specialist on elevators generally. The words of the late Judge Staley still ring true as he asserted in *Trowbridge v. Abrasive Company of Philadelphia*, 190 F.2d 825, 829 n. 9 (3d Cir. 1951):

If we were to declare as a rule of law that one must actually have practical experience in a given industry in order to qualify as an expert in litigation involving its products, we might very well place an onerous burden on plaintiffs in some cases. Where the industry is small and tightly knit, it may be very difficult for the plaintiff to obtain the services of an expert currently employed therein, and it might be equally difficult to find someone who was formerly employed in the industry. But the key experts of an industry would normally be available to the defendant.

Venable's inexperience in the areas of design and manufacturing should go to the weight, and not to the admissibility, of his opinion. *See Bundie v. Skil Corporation*, 591 F.2d 1334 (3d Cir. 1979). We think the pertinent art here was machine guarding, upon which Venable was competent to testify. The weight to be accorded the opinion on the absence of a guard was for the jury. In *Bundie*, this Court reiterated its reluctance to require highly particularized, subspecialization on the part of experts. We conclude, therefore, that the district court's refusal to accept Venable as an expert on the question of defective design was not consistent with the sound exercise of its discretion.

### 2. *Strict Liability*

■ If the expert testimony had been admitted, there would have been "that minimum quantum of evidence," *Denneny v. Siegel*, 407 F.2d at 439, from which the jury might reasonably have found liability under Section 402A. The plaintiff's case was centered on showing that the protruding control buttons were defects requiring a guard. In *Schell v. AMF, Inc.*, 567 F.2d 1259, 1261 (3d Cir. 1977), this court held that the "[l]ack of proper safety devices can constitute a defective design for which there may be recovery under § 402A." In that case, a worker was seriously injured when his arm became entangled in the moving gears of the machine he was operating. We held that the questions of whether the injury was the result of inadequate protection

from the machine's moving gears or whether the design utilized by the manufacturer was adequate for normal use were for the jury.

We think the *Schell* case is applicable to the case *sub judice.* The plaintiff here attempted to show that the exposed buttons constituted an unreasonably dangerous and defective condition. Testimony was presented that the buttons protruded approximately five-eighths to three-fourths of an inch from the wall. Additionally, there was testimony that these buttons may have been activated by someone accidentally leaning against them. We think that the evidence was "of such character that reasonable men, in [the] impartial exercise of their judgment [could] reach different conclusions . . ." *Silverii v. Kramer,* 314 F.2d 407, 409 (3d Cir. 1963). We hold therefore that in view of the proffered testimony the case should have been submitted to the jury on the issue of whether the lack of guards around the buttons constituted a design defect.

■■ At oral argument before us and in his brief, counsel for the plaintiff asserted alternatively that "the elevator malfunctioned [and] in the absence of other responsible causes"[3] or explanation, such malfunction evidenced a defective condition and/or negligence. This malfunction theory was not directly asserted in his pre-trial memoranda and it was therefore appropriate for the learned trial judge to preclude such arguments at trial. The preclusion of such an argument is sustainable as a proper use of discretion. *Taggart v. Vermont Transportation Co.,* 32 F.R.D. 587 (E.D.Pa.1963) aff'd, 325 F.2d 1022 (3d Cir. 1964). However, since the case will be remanded for a new trial, it is appropriate to state our disagreement with the suggestion that proof of a specific defect is required in order to make out a case for the jury. The law in Pennsylvania does not support this assumption. *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974); *Wojciechowski v. Long-Airdox Div.,* 488

F.2d 1111 (3d Cir. 1973); *Greco v. Bucciconi Engineering Co.,* 407 F.2d 87 (3d Cir. 1969). "While a plaintiff's hand in a strict liability case will obviously be strengthened by evidence of a specific defect in the defendant's product, such evidence is not necessary to take this part of the plaintiff's case to a jury." *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. at 329, 319 A.2d at 920. The cases cited above all hold that malfunction may itself, in the absence of abnormal use and reasonable secondary causes, be sufficient evidence of a defect to make the existence of a defect a jury question.

### 3. Breach of Warranty

The·breach·of warranty theory of liability is virtually identical to the strict liability theory in that the concern is the lack of fitness of the product as evidenced by the malfunction itself rather than the conduct of the manufacturer as measured by the standard of due care. *MacDougall v. Ford Motor·Co.,* 214 Pa.Super. 384, 389, 257 A.2d 676, 679 (1969). In light of the proffered expert testimony, the plaintiff might have shown that the lack of guards evidenced a lack of fitness for warranty liability. Additionally, we restate our disagreement with any suggestion in the trial judge's ruling that proof of a specific defect is required. "Although plaintiffs in warranty actions have ordinarily sought to establish the cause of a malfunction, liability has been sustained in ·the absence of proof of a specific defect." *Id.*

### 4. Negligence

■ On the question of Otis' liability on the negligence theory, the plaintiff argued that Otis was liable "because it had agreed with Western Electric Company to install, service, maintain and repair the elevator, and that·this work was negligently done."[4] If carefully done, the plaintiff argues, any service and maintenance inspections would have revealed a dangerous condition that required correction. On the other hand,

---

**3.** Appellant's Brief at 5.

**4.** Plaintiff's Supplemental Pretrial Memorandum ¶ VI(1)(e).

Otis argues that its duty to the plaintiff was limited to the terms of its agreement with Western Electric Company. The contract provided:

We will regularly and systematically examine, adjust, lubricate as required, and if conditions warrant, repair or replace.

This undertaking was limited, however, as follows:

We shall not be required to make other safety examinations nor to install new attachments on the elevators whether or not recommended or directed by insurance companies or by governmental authorities, nor to make any replacements with parts of a different design.

The district court held that, as a result of the above language, Otis assumed no obligation to the plaintiff. We disagree. Although the contract limited its obligation to make replacements with parts of a different design, it did not eliminate Otis' obligation to properly perform its inspections. In *Evans v. Otis Elevator Company*, 403 Pa. 13, 19, 168 A.2d 573, 576 (1961), Otis contracted to inspect the elevator, attempted to limit its obligation to replace parts and was held liable nevertheless for negligent inspection. The court stated:

The orbit of Otis' duty to third persons is measured by the nature and scope of his [sic] contractual undertaking with Sperling and, if, as presently appears, Otis undertook to inspect the elevator at regular intervals, and, if the elevator was in a defective or dangerous condition discoverable by reasonable inspection, Otis would be liable to third persons, regardless of any privity of contract, who might be injured by Otis' failure to properly perform its contractual undertaking of inspection.

Likewise, although Otis may have had no obligation to repair or replace, it was required to conduct regular inspections and to do so properly. We think the question whether the elevator was in a defective or dangerous condition discoverable by reasonable inspection was for the jury.

 On appeal, plaintiff has argued in the alternative for the application of Section 328D of the Restatement (Second) of Torts.[5] Before addressing the issue, we must first note our disagreement with Otis' implication that by failing to argue *res ipsa loquitur* below, plaintiff is precluded from raising it now on appeal. In *Fassbinder v. Pennsylvania Railroad Company*, 322 F.2d 859, 863 (3d Cir. 1963), this Court stated:

The *res ipsa loquitur* doctrine is simply a rule of evidence and like any other rule of evidence it is brought into play where the situation presented makes it applicable. It does not have to be pleaded in the complaint or "noticed" by specific designation to the adverse party at pre-trial or at trial, since it is neither a cause of action nor a ground for recovery, nor an "issue".

Furthermore, the fact that the plaintiff has identified a particular feature of the product (i. e., the buttons) as defective does not prevent the application of the rule. *Id.*

 With regard to the application of Section 328D, the question is whether it is permissible to conclude, after excluding the conduct of the plaintiff and of third persons, that the premature closing of the elevator doors does not usually occur unless the defendant has been negligent. We think the determination of whether the inference was to be drawn was for the jury. There was no evidence that the plaintiff

---

**5.** Section 328D provides:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

 (a) the event is of a kind which ordinarily does not occur in the absence of negligence;

 (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

 (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

contributed in any way to the accident. Although conflicting, we think the evidence sufficiently eliminated the conduct of third parties so as to require resolution by the jury.

Accordingly, the district court erred in directing verdict for Otis.

## B. HARTFORD INSURANCE GROUP AND ATWELL, VOGEL & STERLING, INC.

■■■ Defendant Hartford Insurance Group insured the elevator for the plaintiff's employer, Western Electric Company. Atwell, Vogel and Sterling, Inc. ("AVS") was retained by Hartford to make semi-annual inspections of the elevator for Hartford. The plaintiff's theory of liability against AVS and Hartford was that AVS was to make certain that the elevator was safe to be operated. Otherwise, it was obligated to shut it down. The plaintiff urges that the jury could find that a careful inspection would have disclosed the protrusion of the buttons and that an accidental activation was foreseeable.

The Elevator Act of 1929 [6] governs the design, construction, equipment, maintenance, operation and inspection of elevators in Pennsylvania. From the time of the elevator's installation in 1965 by Otis through 1969, the Act provided that if an elevator was insured, the required semi-annual state inspection could be made by an employee of the insurance company.[7] On March 2, 1970, the Act was amended to require companies insuring elevators to make these inspections, but allowing them to retain inspection companies on a contract basis to make the inspections.[8] In 1972, Hartford retained AVS to make the statutory inspections. In February and July, 1973, these inspections revealed that the elevator was in compliance with all of the

state regulations. The plaintiff does not contest this fact, and at trial presented no evidence that the elevator was in violation of any of these regulations. Given these facts, we think a recent decision of the Pennsylvania Superior Court requires us to affirm the directed verdict for Hartford and AVS. In *Williams v. Eastern Elevator Co.,* 254 Pa.Super. 393, 386 A.2d 7 (1978), the Court held in a similar context:

> Bituminous had no contractual responsibility to service or maintain the elevator. Its sole duty was to perform semiannual inspections for possible infractions of the Pennsylvania elevator code, acting as an approved alternative to a state inspector. Bituminous performed that duty and no code violations were found; and indeed none is alleged. Consequently, there is no basis for attributing to Bituminous any responsibility for failure of the elevator to function satisfactorily.

The above rule applies equally to Hartford which delegated its duty to inspect to AVS. Accordingly, we find no error in directing verdicts in favor of Hartford and AVS.

### III.

■■ At trial, the appellant sought unsuccessfully to introduce testimony that guards had been placed around the elevator buttons subsequent to her accident. The district court excluded the proffered testimony on the basis of Rules 407 and 403 of the Federal Rules of Evidence. We affirm the district court's ruling. Rule 407 [9] requires that the feasibility of precautionary measures be controverted. At the point in the trial at which this evidence was offered, however, there was already testimony that such repairs could be made simply, easily and inexpensively. Thus, additional evidence on this issue would have been cumulative at best and prejudicial at worst.

---

6. 35 P.S. §§ 1341 et seq.

7. 35 P.S. § 1345, as effective through 1969.

8. *Id.,* as amended, Act of March 2, 1970, P.L. 68, No. 30.

9. Rule 407 provides:
 When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

It does not appear from a review of the record that the district court abused its discretion under Rule 403[10] in excluding evidence of subsequent repairs.

### IV.

The order of the district court directing verdict for Otis will be vacated and the case will be remanded for further proceedings consistent with this opinion.

---

10. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.