893 F.2d 49
 29 Fed. R. Evid. Serv. 452
 Connie L. HABECKER, Individually and as Personal
Representative of the Estate of John R. Habecker, Deceased;
and John Michael Habecker, Minor, by Connie L. Habecker, his
Parent, Natural Guardian and Next Friend, Appellants,
v.
COPPERLOY CORPORATION; Clark Equipment Company, Defendants,
and Forklifts, Inc., Defendant and Third Party Plaintiff,
v.
CLARK EQUIPMENT COMPANY; R.L. Jeffries Trucking Co., Inc.;
Department of the Army, United States of America;
and United States of America, Third
Party Defendants.
 Nos. 89-5187, 89-5273.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 16, 1989.
Decided Jan. 8, 1990.
Rehearing and Rehearing In Banc Denied Feb. 7, 1990.
 
 Samuel Posner, Gerald F. Posner (argued), David P. Morreale, Posner, Posner and Posner, Detroit, Mich., for appellants.
 Dean F. Murtagh (argued), German, Gallagher & Murtagh, Philadelphia, Pa., for Copperloy Corp.
 Richard W. Hollstein (argued), Susan L. Parsons, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Clark Equipment Co. and Forklifts, Inc.
 Before BECKER, COWEN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 Plaintiffs, the widow and child of John Habecker, brought this products liability action in the district court for the Middle District of Pennsylvania based on theories of strict liability, breach of implied warranty, and negligence. Habecker, a civilian employee of the New Cumberland (PA) Army Depot (NCAD), was killed when the forklift he was backing off a ramp went off the side of the ramp and turned over. Habecker was ejected and crushed to death when the forklift fell on top of him. The forklift, manufactured in 1977 by Clark Equipment Company, was not designed with (and did not contain) any operator restraints, such as seat belts. Plaintiffs brought the present action against Clark; Forklifts, Inc., the corporation that leased and maintained the forklift; and Copperloy Corporation, the manufacturer of the ramp. Jurisdiction is based on diversity of citizenship, 28 U.S.C. Sec. 1332, and Pennsylvania law applies.
 
 
 2
 Plaintiffs' implied warranty and negligence claims were dismissed before trial. The strict liability theories were grounded on alleged defects in both the forklift and the ramp. Plaintiffs alleged that the forklift was defective because it had a sticking throttle and because it had no operator restraints (seat belts). Plaintiffs alleged that the ramp was defective because it lacked adequate warnings as to the proper manner of its hook-up and because it did not have an overload relief valve that would cause the ramp to settle, instead of turn over, when there was too much weight on a portion of the ramp. The district court granted a directed verdict for Copperloy on both claims that the ramp was defective (thus relieving Copperloy of all liability) and a partial directed verdict for Clark and Forklifts on the throttle issue.[1] The jury returned a verdict for defendants Clark and Forklifts on the seat belt issue.
 
 
 3
 Plaintiffs appeal, challenging several of the district court's evidentiary determinations and its conclusions on sufficiency of evidence. We will affirm the district court's grant of a directed verdict in favor of Copperloy, and also its grant of a partial directed verdict in favor of Clark and Forklifts (on the defective throttle issue). However, we will reverse and remand for a new trial on the operator restraints issue. We do so because we conclude that the district court erred in refusing to permit Raymond Brandt, who possessed a master's degree in safety education and a doctorate in human factors and product safety design, and who had worked in the health and safety sciences for thirty-three years, to testify as an expert witness for plaintiffs about the causal relation between the lack of operator restraints and operator injury. Although Brandt did not possess an engineering degree, our jurisprudence does not permit the exclusion of a proffered expert with a background as extensive as his. And, although Brandt's testimony would have been cumulative to the testimony of another expert on the issue for which plaintiff sought to proffer his testimony, the defendants (collectively) offered three witnesses on the issue, and, under all the circumstances, we cannot say that the error was harmless.
 
 I.
 
 4
 During the trial, plaintiffs produced two expert witnesses. Plaintiffs' first witness, Nicholas Miller, testified about OSHA requirements concerning seat belts for forklifts used in the construction industry. He also testified about the relationship between the lack of operator restraints and operator injury. Brandt was plaintiffs' second witness. He testified about the lack of warnings on the hook-up of the mobile yard ramp. However, as discussed, Brandt was not allowed to testify about the causal relationship between the lack of operator restraints and operator injury. We review decisions of the district court pertaining to the admission of expert testimony for abuse of discretion. Knight v. Otis Elevator Co., 596 F.2d 84, 87 (3d Cir.1979).
 
 A.
 
 5
 The principle of liberal admission of expert testimony is found in Rule 702 itself, in the advisory committee note to the rule, and in our case law. Beginning with Rule 702 itself, it provides that a witness may qualify as an expert by "knowledge, skill, experience, training or education" (emphasis added).[2] This principle of liberal qualification of experts can also be found in the advisory committee note to the rule, which elaborates on the meaning of "expert," explaining that the word "expert" should not be defined in a narrow sense. Its last paragraph states:
 
 
 6
 The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training or education." Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g. physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values.
 
 
 7
 Fed.R.Evid. 702, advisory committee's note.
 
 
 8
 Finally, this principle of the liberal qualification of experts can also be found in the case law of the circuit. The leading case is Knight v. Otis Elevator Co., 596 F.2d 84 (3d Cir.1979), where the plaintiff brought a products liability action asserting that she was injured when the door of a freight elevator in her employer's workplace prematurely closed and struck her. Among other defendants, she sued Otis Elevator Co., which designed, manufactured and installed the elevator. Her expert was a consulting chemist and engineer specializing in materials engineering and safety. He also had taught a course at the University of Pittsburgh engineering school, had designed safety equipment for eighteen years, and had designed button guards to prevent inadvertent activation of machinery. Plaintiff sought to have him testify that unguarded elevator control buttons constituted a design defect. Nonetheless, the district court excluded the testimony because it believed that such testimony would require some background in the design and manufacture of elevators. At the close of plaintiff's case, the district court granted defendants a directed verdict, concluding that no evidence had been introduced to show a design defect.
 
 
 9
 We reversed and remanded for trial, holding that the proposed expert should have been allowed to testify because his inexperience in the areas of design and manufacturing should go to the weight, not the admissibility, of his opinion. Knight at 88. We reasoned that the weight to be assigned his opinion was within the province of the jury. Id. Thus, in Knight, we established a liberal policy of admitting expert testimony which will aid the trier of fact.
 
 
 10
 More recently, in Hammond v. International Harvester Co., 691 F.2d 646, 652-53 (3d Cir.1982), we upheld the district court's decision to allow a witness to testify as an expert in a products liability action involving a tractor, even though the expert's only qualifications were work experience selling automotive and agricultural equipment and teaching automobile repair at a high school. We invoked Rule 702, and noted that the witness appeared to qualify as an expert by virtue of knowledge and experience. Id. See also In re Japanese Electronic Products, 723 F.2d 238, 279 (3d Cir.1983)("doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions" (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence p 702 at 702-14-15 (1982)), rev'd on other grounds sub nom. Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). See also Roe v. Deere & Co., Inc., 855 F.2d 151, 155 (3d Cir.1988), and Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 114-15 (3d Cir.), cert. denied, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987) (both noting that Fed.R.Evid. 702 establishes a liberal policy of admitting evidence which will aid the trier of fact and citing to Knight ).
 
 B.
 
 11
 As we have discussed, Brandt, plaintiffs' proposed expert, has a master's degree in safety education, has a doctorate in human factors and product safety design, teaches at Purdue University, is active in product safety groups and societies, and has been employed as a safety specialist. We are cognizant of the deference to be accorded the district court in matters pertaining to the admission or exclusion of expert testimony, but we conclude, nonetheless, that, in light of the jurisprudence we have described, Brandt's background qualified him as an expert on the causal relationship between the lack of operator restraints and operator injury. Rule 702 requires only that Brandt qualify as an expert by virtue of knowledge, skill, experience, training, or education. Although we suspect that Brandt, with his background, could qualify under each individual category listed in the rule, we simply hold that taking them in sum he qualified to testify on the operator restraint issue. Accordingly, we conclude that the district court abused its discretion by excluding Brandt's testimony.
 
 C.
 
 12
 Clark and Forklifts argue that even if the district court abused its discretion, any error was harmless because Brandt's testimony would have been the same as that of another expert the plaintiffs proffered. Fed.R.Civ.P. 61 provides, inter alia, that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." However, we have held that errors in civil cases (like errors in criminal cases) are not harmless unless it is " 'highly probable' " that they did not affect a party's substantial rights. McQueeney v. Wilmington Trust Co., 779 F.2d 916, 923-28 (3d Cir.1985). While Brandt's testimony may have been cumulative to the testimony of Nicholas Miller, having two expert witnesses testify, instead of one, could easily have made the jury more likely to believe plaintiffs' theory, particularly given that the defendants collectively offered the testimony of three witnesses on the issue. Therefore, we cannot say that the exclusion of Brandt's testimony is such that it is "highly probable" that it did not affect plaintiffs' substantial rights. Accordingly, the jury verdict for defendants Clark and Forklifts on the operator restraints issue must be set aside and the case remanded for a new trial.
 
 II.
 
 13
 Plaintiffs argue that the district court erred by continually admitting, over their objections, extensive testimony and evidence about industry standards, government regulations, and other "state of the art" matters concerning operator restraints, because such evidence is inadmissible in products liability cases governed by Pennsylvania law. The district court recognized the validity of this complaint, admitting the evidence only because it believed that plaintiffs had "opened the door" by introducing such evidence themselves. Plaintiffs rejoin, in effect, that they opened the door but a crack and the district court effectively pushed it wide open.
 
 
 14
 We find it unnecessary to address this issue because the case must be re-tried. The district court has recognized the problem, and we are confident that it will carefully limit the admissibility of such evidence on retrial.
 
 
 15
 The plaintiffs have made a number of additional arguments. They contend that the district court erred by granting a directed verdict to defendant Copperloy, and a directed verdict to defendants Clark and Forklifts on the "sticking throttle" issue. They also argue that the district court erred by refusing to admit the two NCAD investigative reports, see supra n. 1; by refusing to admit into evidence the testimony of safety officer David Wile about his post-accident observations of the sticking throttle, see supra n. 1; and by eliminating the issue of retrofitting the forklift with a seat belt.
 
 
 16
 Contrary to plaintiffs' assertions as to the NCAD reports, plaintiffs did not offer these reports into evidence. Thus, the district court did not rule on their admissibility. Certainly, plaintiffs cannot attack a non-existent ruling on appeal. We have considered plaintiffs' arguments with respect to the testimony of David Wile, and conclude that the district court's ruling was well within the discretion afforded district courts in this area.[3] As pertains to the district court's elimination of the retrofit issue, we note that the district court only eliminated the issue of failure to retrofit, and not the issue of failure to give a post-sale warning.[4] Thus, Walton v. Avco Corp., 383 Pa.Super. 518, 557 A.2d 372 (1989), cited by the plaintiffs, is inapplicable. As to the retrofit issue, no Pennsylvania case has recognized a duty to retrofit, and, indeed, one Pennsylvania case has suggested that such a duty would be inappropriate under established principles of Pennsylvania law. See Lynch v. McStome & Lincoln Plaza Assoc., 378 Pa.Super. 430, 440-41, 548 A.2d 1276, 1281 (1988). Thus, we also affirm the district court's ruling on this issue.
 
 
 17
 With respect to the directed verdicts issues, we have reviewed the record and agree with the district court that, although plaintiffs did introduce extensive evidence at trial as to the fact that the forklift may have had a sticking throttle and that the mobile yard ramp may have been defective, they did not introduce any evidence from which the jury could reasonably infer that a sticking throttle or a defect in the mobile yard ramp caused John Habecker's death. Causation is an essential element of a products liability (or any other tort) action. The Restatement (Second) of Torts Sec. 431 (1965) provides that, at a minimum, the tortfeasor's actions must be shown to have been a "substantial factor" in bringing about the harm to the plaintiff. This section of the Restatement was adopted by the Pennsylvania Supreme Court in Whitner v. Lojeski, 437 Pa. 448, 456-57, 263 A.2d 889, 893-94 (1970). See also Takach v. B.M. Root Co., 279 Pa.Super. 167, 170-71, 420 A.2d 1084, 1086-87 (1980). Without introducing evidence of "substantial factor" causation, plaintiffs did not make out a prima facie case. Therefore, we cannot say that the district court erred in its granting of directed verdicts and we will affirm its decision.
 
 III.
 
 18
 For all of the foregoing reasons, we will reverse the judgment of the district court excluding the proffered expert testimony of Raymond Brandt and will remand for a new trial against defendants Clark and Forklifts on the operator restraints issue. The directed verdict for defendant Copperloy and for defendants Clark and Forklifts on the sticking throttle issue will be affirmed. The plaintiffs, Clark and Forklifts shall bear their own costs. The plaintiffs shall bear Copperloy's costs.
 
 
 
 [1]
 The district court had excluded a fair amount of plaintiff's proposed evidence on the sticking throttle issue. Statements of other forklift operators about past problems with the throttle, a statement by the decedent concerning the sticking throttle, and the observations of David Wile, a former NCAD safety director, about the sticking throttle were all ruled inadmissible on either relevancy or hearsay grounds. The district court also refused to admit into evidence two NCAD reports concerning the accident which would have shown that the throttle had a tendency to stick
 
 
 [2]
 Fed.R.Evid. 702 provides in full:
 Rule 702. Testimony by Experts
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 [3]
 Furthermore, we conclude that even if the testimony of David Wile was erroneously excluded, a directed verdict would still have been proper because there still would be insufficient evidence of causation. See, infra p. 54
 
 
 [4]
 Plaintiffs assert that the district court improperly eliminated the issue of failure to give a post-sale warning. We are of the opinion, however, that, even if Pennsylvania law imposes liability for a post-sale failure to warn, the district court's ruling did not prevent the plaintiffs from raising this issue at trial. They did not do so and thus the district court had no occasion to rule on this warning issue. Thus, there is no error here