

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-1998

# Lauria v. Natl RR Passenger

Precedential or Non-Precedential:

Docket 97-1306,97-1361,97-1362,97-1363

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Lauria v. Natl RR Passenger" (1998). *1998 Decisions.* Paper 117.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/117

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 22, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-1306, 97-1361, 97-1362, 97-1363

FRANK LAURIA,
        Appellant in Appeal No.
        97-1306

v.

NATIONAL RAILROAD PASSENGER CORPORATION,
        Appellant in Appeal Nos.
        97-1361/62/63

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 95-1561)

Argued: March 17, 1998

Before: SLOVITER, RENDELL, and SEITZ, Circuit Judges

(Opinion Filed: May 22, 1998)

        Marvin I. Barish
        Stacey E. Barish (ARGUED)
        Marvin I. Barish Law Offices, P.C.
        The Curtis Center, Suite 801
        Sixth & Walnut Streets
        Philadelphia, PA 19106
         Attorneys for Appellant, Cross-
         Appellee

        David E. Faust
        Andrew J. Connolly (ARGUED)
        Sheila A. Haren
        Post & Schell, P.C.
        1800 JFK Blvd., 19th Floor
        Philadelphia, PA 19103
         Attorneys for Appellee,
         Cross-Appellant

OPINION OF THE COURT

RENDELL, Circuit Judge:

Appellant Frank Lauria and two railyard co-workers were traversing the railroad tracks near Philadelphia's 30th Street Station late one evening when Lauria slipped and injured himself. He sued his employer, Appellee National Railroad Passenger Corporation ("Amtrak"), under the Federal Employers' Liability Act, 45 U.S.C. S 51, et seq., ("FELA"), claiming a workplace injury caused by Amtrak's failure to provide a reasonably safe work environment. At trial, the district court refused to permit the admission of expert and lay opinion testimony, and at the close of Lauria's case it entered a judgment as a matter of law in favor of Amtrak. We have jurisdiction over the district court's ruling pursuant to 28 U.S.C. S 1291, and we will reverse and remand for a new trial.

I.

On November 8, 1993, Lauria slipped while crossing the tracks at Amtrak's Penn Coach Yard in Philadelphia with two co-workers, Campbell Smith, an engineer, and Carl Boselli, a conductor. Lauria testified that because they were crossing a "dark" railyard with "poor" lighting conditions, he was trying to step on the ballast, the coarse gravel that is used to form the bed of the railroad, rather than on the rail ties themselves, because it provides stable footing and support between the tracks. However, Lauria lost his balance and fell on Track 26 while trying to step over the ties. He stated under oath that he raised his left foot, lifted

2

it over the rail, and set it firmly on the ballast. He then lifted his right foot, but he slipped when trying to place that foot down on the ballast, and he fell to the ground, developing sharp pains in his right leg and lower back before losing consciousness. Lauria admitted that he never saw what caused the fall, but he testified that he had stepped on "something slippery," rather than on the ballast that is usually found between the two rail ties on the tracks.

Boselli testified that he was standing an "arm's length" from Lauria when the accident occurred. Boselli saw Lauria fall, heard him "smack" onto the ground, and felt "baffled" because Lauria "fell violently." Immediately after the accident, Boselli looked down and saw a "fresh" skid mark on the surface of a piece of wood that was lying inside the gauge of the track where the ballast providing stable footing would normally be found. The wood was in the exact area where Lauria had slipped, and the skid mark was at the precise spot where the fall had occurred. Boselli also noticed that the lighting conditions were "poor," because the overhead lights did not sufficiently illuminate the area where Lauria fell, and because the trains "were blocking the passage of what lights did exist."

Lauria attempted to offer Robert T. Slavin, a track foreman and maintenance engineer, to support his case as an expert witness under Federal Rule of Evidence 702. Slavin was prepared to testify that Amtrak's negligence in failing to remove a piece of wood from the tracks had contributed to and caused Lauria's injuries. However, the district court found that Slavin was not sufficiently qualified as an expert on track maintenance operations, and it refused to allow him to render an opinion. The court also rejected Lauria's effort to introduce Slavin as a lay witness pursuant to Federal Rule of Evidence 701. As a result, Lauria sought to recall Boselli as a lay opinion witness to testify about the condition of the tracks on the morning after the accident. Once again, though, the district court denied Lauria's request under Rule 701 and precluded the witness from testifying. Amtrak then moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), arguing that without the testimony of

3

Slavin and Boselli, Lauria had presented no evidence that Amtrak's negligence had contributed to his injuries. The district court agreed, and on March 27, 1997, it dismissed Lauria's claims and entered judgment in favor of Amtrak at the close of Lauria's case.

Lauria contends on appeal that the district court abused its discretion in excluding the testimony of Slavin and Boselli and erred in entering a judgment in Amtrak's favor.[1] We need not reach the issue of the correctness of the district court's ruling on the motion for judgment as a matter of law, because we conclude that Lauria's failure to produce evidence of negligence resulted from the improper exclusion of testimony from Slavin and Boselli that was clearly admissible.[2] Therefore, we will reverse and remand for a new trial at which Slavin and Boselli may testify on Lauria's behalf.

II.

The district court incorrectly prohibited Slavin from testifying as an expert witness. Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the

_____

1. We review the district court's decisions to exclude expert testimony under Rule 702, and to exclude lay opinion testimony under Rule 701, for abuse of discretion. See In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 856 n.33 (3d Cir. 1990) (expert testimony); Government of the V.I. v. Knight, 989 F.2d 619, 629 (3d Cir. 1993) (lay opinion testimony).

2. Although we need not decide the propriety of the court's judgment as a matter of law based on the evidence before it, we note that it is a close
question given the minimal proof required to withstand a directed verdict in FELA cases combined with Lauria's evidence as to poor lighting in the railyard. See Pehowic v. Erie Lackawanna R.R. Co., 430 F.2d 697, 699-700 (3d Cir. 1970) (footnotes omitted) (emphasis added) (holding that a "trial court is justified in withdrawing[FELA] issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee").

4

form of an opinion or otherwise." The Rule therefore has three fundamental requirements: (1) the proffered witness must qualify as an expert by knowledge, skill, experience, training, or education; (2) the expert must testif y to scientific, technical, or other specialized knowledge; and (3) the expert's testimony must assist the trier o f fact. United States v. Velasquez, 64 F.3d 844, 849 (3d Cir. 1995). Here, the district court appears to have excluded Slavin's testimony based on the first two elements of the test, evincing skepticism as to both the extent of Slavin's qualifications and as to whether he possessed specialized knowledge.3

Lauria offered Slavin as an expert in track maintenance based on his experience and education in "Maintenance of Way" and related train procedures. Slavin's expert report contained his opinion that, from an examination of photos and the site, the piece of wood in question was a"base tie" over which a walkway platform once existed; that it should have been discovered by Amtrak during a regular inspection and removed; and that it "contributed to and caused" Lauria's injuries.4

_____

3. The district court's colloquy with Slavin, set forth below, could be interpreted as questioning either the first element of the Rule -- whether Slavin qualified as an expert by virtue of his special knowledge -- or both of the Rule's first two prongs -- his experience and the nature and extent of his knowledge regarding track maintenance. We will construe it based on the latter, believing that to be the approach most consistent with the nature of the court's inquiry.

4. At oral argument Amtrak argued that the district court properly excluded Slavin's testimony, because Slavin could not testify as to causation since he was not an expert in accident reconstruction. However, this argument misconstrues the district court's ruling, which never reached this issue, but focused instead on the extent of his "specialized knowledge" as it relates to qualifying him to be an expert witness. No mention was made of the last sentence of Slavin's report regarding his stated view that Amtrak's failure"to provide a reasonably safe place in which to perform his duties contributed to and caused Lauria's injury." We thus focus only on Slavin's qualifications and specialized knowledge in the area of industry standards for track maintenance. It will be for the district court to examine whether Slavin is qualified to speak to the issue of causation if Amtrak makes this objection at a new trial.

5

Lauria proffered evidence as to the extent of Slavin's experience in railroad track operations. Slavin had worked for Consolidated Rail Corporation ("Conrail") from 1976 to 1993, where he was hired as a trackman and then promoted to machine operator, assistant supervisor, and, in 1981, to supervisor of railroad tracks. As a supervisor, Slavin assumed ultimate responsibility for conditions on a 200-300 mile stretch of track located in Indiana. Among other things, he oversaw maintenance of the track structure, installation of the rail ties, and rehabilitation of all switches, and he was responsible for records, chargeouts, and safe maintenance of the area. Slavin also successfully completed training programs for track foremen, maintenance and way engineers, equipment operators, and supervisors during his seventeen-year tenure at Conrail. In addition, he had been self-employed as a railroad track safety consultant since 1993.

In pretrial proceedings, the district court had denied Amtrak's motion in limine to exclude Slavin's testimony. See Lauria v. National R.R. Passenger Corp., No. Civ. A. 95-1561, 1997 WL 138906, at *6-7 (E.D. Pa. March 24, 1997). However, after listening to the voir dire, and asking its own questions, the district court rejected Lauria's

_____

We note, however, that counsel for Lauria stated at oral argument that Slavin's work in accident reconstruction over the last five years did provide a basis for his expert status on causation, and that a number of federal courts have permitted experts qualified because of their specialized knowledge to testify as to the cause of railroad accidents. See, e.g., Lowery v. Illinois Cent. Gulf R.R. Co. , 891 F.2d 1187, 1194 & n.3 (5th Cir. 1990) (witness with ten years experience as train master, operating rules examiner, manager of railroad car repair, and inspector of railroad equipment was qualified as an expert on whether hand brake operations could cause personal injuries); Fritts v. Toledo Terminal R.R. Co., 293 F.2d 361, 364 (6th Cir. 1961) (engineer with forty years of railroad experience could testify that worn frogs, or railroad track devices, caused a train to lurch, because "[q]ualified persons as experienced railroad employees may testify and express opinions on matters of this type"); Atchison, Topeka & Santa Fe Ry. Co. v. Simmons, 153 F.2d 206, 208-09 (10th Cir. 1946) (locomotive engineers with experience operating trains qualified as experts to testify as to whether the presence of caliche rock caused a train derailment).

6

request to introduce Slavin at trial as a qualified expert on track maintenance.5 The court's examination of Slavin proceeded in relevant part as follows:

The Court: Now the first question, do you consider yourself qualified by reason of your scientific education? Do you feel yourself qualified to testify as an expert based on your technical knowledge by reason of education or experience and if so would you be specific as to what you think that is? Technical knowledge.

Slavin: I believe so with the hands-on experience that I've had over the years working with track and track equipment and maintenance and production, yes, I --

The Court: You consider that to be your specialized knowledge?

Slavin: Yes.

The Court: And what separates you from other persons who have worked for twenty years on the railroad? Would all of those . . . ladies or gentlemen who have had the same experience -- work experience as you, in your mind, sir, do you consider them to be persons who have the type of technical or specialized knowledge who can come into a court of law and give answers to hypothetical questions like a doctor does?

Slavin: I believe so.

The Court: And why is that? What is so unusual about working the rails as you have over the years which gives persons who had that experience specialized knowledge of the type that would enable them to offer an opinion, to hypothecate?

_____

5. Under Fed. R. Evid. 104(a), the trial judge decides the preliminary questions of whether the proposed expert is qualified and whether the testimony is admissible.

Slavin: I don't have an answer for that.

The Court: And that's my dilemma. . . . I'm not qualifying
        him as an expert. . . . I don't see any basis to
        qualify him as an expert.

We must exercise restraint in examining the district court's decision on appeal, because a "trial court's determination whether to admit or exclude expert testimony will be upheld unless manifestly erroneous." Waldorf v. Shuta, ___ F.3d ___, Nos. 97 5195, 97–5222, 1998 WL 173103, at *27 (3d Cir. Apr. 15, 1998) (quotation omitted). Nevertheless, we find that in light of Slavin's qualifications and the liberal standard for determining whether a witness qualifies as an expert for purposes of Rule 702, the district court did err in precluding Slavin from testifying. [6]

We have consistently maintained that Rule 702 is to be interpreted liberally. See, e.g., Velasquez, 64 F.3d at 849; In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 855 (3d Cir. 1990) ("Paoli I"). "[A] broad range of knowledge, skills, and training qualify an expert as such," and we have thus "eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994) ("Paoli II").

In fact, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996); see also Paoli I, 916 F.2d at 855 (writing that any "insistence on a certain kind of degree or background is inconsistent with our jurisprudence"). We have held that witnesses such as Slavin can qualify as experts under Rule 702 on the basis of practical experience alone, and a formal degree, title, or educational speciality is not required. American Tech.

_____

6. Because we hold that Slavin should have been permitted to testify as an expert witness, we do not reach Lauria's contention that Slavin should have been permitted to testify alternatively as a lay witness pursuant to Fed. R. Evid. 701.

8

Resources v. United States, 893 F.2d 651, 656 (3d Cir. 1990). For example, in Hammond v. Int'l Harvester Co., we held that a witness who sold agricultural equipment and taught automobile repair and maintenance at a high school, but who lacked any formal training or education, could testify as an expert in a products liability action involving tractors, based on his "knowledge and experience" alone. 691 F.2d 646, 653 (3d Cir. 1982). Similarly, we held recently that a witness could qualify as a vocational expert, despite a lack of formal training, because he had experience in vocational rehabilitation and familiarity with the relevant literature in his field. Waldorf, #6D6D 6D# F.3d ___, 1998 WL 173103, at *27; see also United States v. Riccobene, 709 F.2d 214, 230-31 (3d Cir. 1983) (concluding that an FBI agent qualified as an expert to define certain terms on undercover audiotapes because of his twelve years of practical experience in organized crime investigations), overruled on other grounds by Griffin v. United States, 502 U.S. 46 (1991); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence S 702.06[4], at 702-39 (2d ed. 1997) ("A person may qualify as an expert on the basis of skill or practical experience rather than education or training."). We conclude that Slavin's twenty years of experience with track equipment, maintenance, and safety procedures qualified him as an expert who could testify as to Amtrak's responsibility to inspect and maintain the track in a safe condition.

Additionally, the knowledge forming the basis of Slavin's opinion was clearly "specialized." In evaluating this second element of Rule 702, we measure the reliability or trustworthiness of the expert's testimony. Velasquez, 64 F.3d at 849. However, the "specialized" knowledge upon which Slavin's testimony is founded is not the same as "scientific" and "technical" knowledge, as these terms are used in the disjunctive in Rule 702. To be "specialized," knowledge can be based on sufficient practical or work experience in the field about which the witness is testifying, and it need not be based on testing or experiments beyond common understanding. Fed. R. Evid. 702, advisory committee's note; Habecker v. Copperloy Corp. , 893 F.2d 49, 51-52 (3d Cir. 1990). Therefore, we need only ask whether Lauria has shown that Slavin's testimony would be

reliable or trustworthy in light of Slavin's practical background and training.7 We conclude that given Slavin's twenty years of experience in track maintenance, operations, and safety, and given the nature of his opinion and the liberal standard by which we interpret reliability under Rule 702, Velasquez, 64 F.3d at 849-50, Lauria has clearly met his burden to demonstrate that Slavin's testimony would be sufficiently reliable so as to be admissible.

We also find that the third element under Rule 702, namely, that Slavin's testimony would assist the trier of fact, is clearly met. As the Supreme Court has written, this "condition goes primarily to relevance." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993). The proffered expert's testimony must "fit" under the facts of the case so that "it will aid the jury in resolving a factual dispute." Id. (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). Once again, however, the standard for this factor "is not that high," Paoli II, 35 F.3d at 745, and we find that it has been met in the case at bar. The primary issue here is whether Amtrak was negligent in failing to remove a base tie from Lauria's workplace. Slavin was the only witness originally presented to testify that the tie was a dangerous obstruction that should have been discovered and removed, and was the only such witness who would have asserted that Amtrak's negligence made the workplace unsafe. There is, therefore, a clear "fit" connecting the issue

_____

7. This case does not require us to test the reliability of Slavin's opinion
with the factors outlined in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Whether Daubert even applies outside the scientific context remains in dispute. See, e.g., id. at 590 n.8 (noting that the opinion was "limited to the scientific context because that[was] the nature of the expertise" offered in the case); Watkins v. Telsmith, Inc., 121 F.3d 984, 991 (5th Cir. 1997) (Daubert is applicable to cases involving specialized knowledge); United States v. Webb, 115 F.3d 711, 716 (9th Cir. 1997) (Daubert's standards "simply do not apply" to experts with specialized knowledge). We do not, however, need to resolve that controversy here. Because Slavin's opinion is based on his observations and familiarity with "Maintenance of Way Procedures" and is gleaned from years of practical experience, the discipline in this case is so different from a scientific inquiry that we see no need to engage in a detailed analysis regarding the scientific reliability of the proffered opinion.

10

in the case with the expert's opinion, which will aid the jury in determining whether the defendant's conduct met the standard of care. Consequently, we conclude that Slavin should have been permitted to testify.

Finally, we note that because Slavin was the only witness originally offered to prove Amtrak's negligence with respect to the base tie, his exclusion from the trial did not constitute harmless error. The exclusion of expert evidence will be upheld as harmless error only where it is "highly probable" that the error did not affect the judgment in the district court. Holbrook, 80 F.3d at 787. After reviewing Slavin's proffered testimony, as well as the basis for the district court's ruling, we cannot say that it is "highly probable" that the error in this case did not contribute to the entry of a judgment in Amtrak's favor.

III.

We also conclude that the district court abused its discretion in rejecting Lauria's request to recall Boselli as a witness to render a lay opinion under Rule 701. Once the district court rebuffed Lauria's attempt to introduce Slavin as an expert witness, Lauria sought to have Boselli testify about the condition of the tracks as he perceived them on the morning after the accident. The record indicates that Boselli would have opined that Lauria slipped on an extra piece of wood that was located between the tracks in an area where train employees would ordinarily expect to find ballast. However, after discussing the matter with the parties, the district court concluded that Boselli could "add nothing more as a lay witness," and it denied Lauria's request to recall him to the stand because, in its view, Boselli had "no information to give to the jury which would in any way, shape, or form aid them in their determination regarding the location of the fall and what caused the fall."

We disagree. Federal Rule of Evidence 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness

11

and (b) helpful to a clear understanding of the wi tness' testimony or the determination of a fact in issue.

The district court did not view Boselli's proffered testimony as helpful to the determination of Amtrak's negligence, and it thus prohibited Boselli from testifying based on the language in Rule 701(b). Yet we believe that the standard for admissibility under that provision is liberal enough to allow Lauria to recall Boselli in support of his case-in-chief.

We have noted concerning the admissibility of lay opinion testimony that the "modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 403 (3d Cir. 1980). Therefore, an opinion is"helpful" to the trier of fact within the meaning of Rule 701(b) if it aids or clarifies an issue that the jury would not otherwise be as competent to understand. See United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982) ("Opinions of non-experts may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion.") As long as the "circumstances can be presented with greater clarity by stating an opinion, then that opinion is helpful to the trier of fact." Government of the V.I. v. Knight, 989 F.2d 619, 629 (3d Cir. 1993).

Boselli's opinion that Lauria slipped on an extra piece of wood on the tracks easily satisfies these permissive standards. His testimony would have shown the existence of an unforseen obstruction in the exact location where Lauria fell, which, in turn, could have assisted the jury in determining whether the wood posed an unreasonable danger to railroad employees crossing the tracks. Regardless of what other evidence had been presented at trial, Boselli's statements would have informed the jury as to issues of track maintenance and safety encountered in the ordinary course, and would have identified a potential hazard that was central to Lauria's theory of negligence. Moreover, nothing in the record suggests that Boselli lacked the experience or specialized knowledge needed to render an opinion on this issue. In this regard, the instant case differs materially from Asplundh Mfg. Div. v. Benton Harbor

12

Eng'g, 57 F.3d 1190, 1201 (3d Cir. 1995), where we held that lay opinions on technical matters such as causation "must derive from a sufficiently qualified source as to be reliable and hence helpful to the jury."

Accordingly, we conclude that the district court erred by prohibiting Lauria from recalling Boselli to the stand, because Boselli's lay opinion testimony certainly would have been "helpful" to the "determination of a fact in issue" within the meaning of Rule 701. Also, given the substance of Boselli's proffered testimony in the context of Lauria's case, we cannot conclude that the court's error in excluding Boselli's testimony was harmless. See Holbrook , 80 F.3d at 787.

IV.

Amtrak has filed a cross-appeal challenging several of the district court's rulings, but we reject these contentions because we agree substantially with the reasoning of the district court. We will thus affirm the February 19, 1997, denial of Amtrak's renewed motion for summary judgment, the March 24, 1997, denial of Amtrak's motion in limine to exclude the testimony of John Mariani, D.O., I. David Weisband, D.O., and Robert T. Slavin, and the March 24, 1997, grant of Lauria's motion in limine to exclude Slavin's personnel and medical records.

V.

The district court abused its discretion by excluding the testimony of Robert T. Slavin as an expert witness, and by prohibiting Lauria from recalling Carl Boselli to the stand as a lay opinion witness. Accordingly, the district court's Order dated March 27, 1997, will be reversed, and the cause will be remanded for a new trial consistent with this opinion.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

13