**R. Scott HOUGHTON, Appellant,**

v.

**The PORT TERMINAL RAILROAD ASSOCIATION, Appellee.**

No. 14–98–00345–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 8, 1999.

---

Tom R. Letbetter, George Payne, Houston, for appellants.

Kyle M. Rowley, Gordon A. Holloway, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, FOWLER and FROST.

## O P I N I O N

KEM THOMPSON FROST, Justice.

This is a personal injury case in which appellant, R. Scott Houghton, appeals from a take-nothing judgment in favor of appellee, Port Terminal Railroad Association ("the Railroad"). Houghton asserts four broad issues on appeal in which he alleges the trial court erred in (1) refusing a requested jury instruction and overruling his objection to the jury charge; (2) denying his challenge for cause to three prospective jurors; (3) excluding expert testimony; and (4) excluding evidence of the locomotive's defects. We affirm.

### BACKGROUND AND PROCEDURAL POSTURE

Houghton, an engineer employed by the Railroad, alleged that he injured his back when the engineer's seat in which he was sitting separated from its mounting as a result of a hard impact from the coupling of railroad cars. Houghton sued the Railroad under the Federal Employers Liability Act ("FELA") for negligence, alleging the Railroad failed to properly maintain the locomotive equipment. *See* 45 U.S.C.A. § 51 (West 1986). Houghton also asserted a claim under the Boiler Inspection Act ("BIA"), alleging the loco-motive's brakes and the engineer's seat were not in proper condition. *See* 49 U.S.C.A. § 20701(1) (West 1997). A jury found in favor of the Railroad and the trial court entered final judgment on the verdict. Houghton filed a motion for new trial, which the trial court denied.

### JURY QUESTION AND INSTRUCTIONS

In his first issue, Houghton contends the trial court erred in refusing two requested jury questions and in submitting to the jury two questions that improperly stated the burden of proof on causation under the FELA and the BIA. Houghton also complains the trial court abused its discretion in refusing his request for a jury instruction setting out the duty of care that the Railroad owed to him under the BIA.

When FELA cases are brought in state court, federal law governs the substantive rights of the parties and state rules govern procedural matters. *St. Louis Southwestern Ry. Co. v. Dickerson,* 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); *Mitchell v. Missouri–Kansas–Texas R. Co.,* 786 S.W.2d 659, 661 (Tex.1990). Under federal law, a railroad carrier is liable for damages to its employees who suffer an injury "[r]esulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances … or other equipment." 45 U.S.C.A. § 51 (West 1986). Although grounded in negligence, the FELA does not define negligence. *See Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Courts applying and interpreting the statute have held that a FELA plaintiff must prove the common law components of negligence, including duty, breach, foreseeability, causation, and injury. *See Adams v. CSX Transp. Inc.,* 899 F.2d 536, 539 (6th Cir.1990). Section 51 of the FELA, however, departs from the common law in the area of causation by establishing a stan-

dard of "in the whole or in part" causation which replaces the common law standard of proximate causation. *See Nicholson v. Erie R.R. Co.*, 253 F.2d 939, 940 (2d Cir. 1958). Under the FELA, a case must go to the jury if there is any probative evidence to support a finding that "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

 The FELA also provides for a cause of action which is not based on negligence but which may be brought under the FELA for an injury caused by the railroad's violation of the BIA. *See Urie*, 337 U.S. at 188–89, 69 S.Ct. 1018 (stating the BIA supplements the FELA); *Summers v. Missouri Pacific R.R.*, 132 F.3d 599, 606 (10th Cir.1997) (noting actions alleging violation of the BIA are brought under the FELA). The BIA provides that a railroad carrier may use a locomotive on its railroad line only when the locomotive or its parts and appurtenances (1) are in proper condition and safe to operate without unnecessary damages or personal injury; (2) have been inspected as required by the Secretary of Transportation; and (3) can withstand every test prescribed by the Secretary of Transportation under the BIA. *See* 49 U.S.C.A. 20701 (West 1997). Under the BIA, it is not necessary to prove that violations of a safety statute constitute negligence; proof that an employer violated the BIA is effective to show negligence as a matter of law. *See Urie*, 337 U.S. at 189, 69 S.Ct. 1018. The standard of causation required in a BIA case, however, is the same as the standard of causation required in a FELA negligence case. *Id.*

### Jury Questions

 Houghton contends the trial court erred by including in the court's charge (1) a FELA negligence question asking whose negligence was a cause, in whole or in part, of his injury and (2) a BIA question asking whether parts of the locomotive not in proper condition and not safe to operate without unnecessary danger of personal injury, caused, in whole or in part, his injury. Houghton objected to both of these jury questions on the same ground—that the phrase "in whole or in part" was the wrong standard. Houghton claims the proper causation standard is whether employer negligence played "*any part, even the slightest,*" in producing the injury, as enunciated in *Rogers*, 352 U.S. at 506. (emphasis added). He requested the trial court to give the same questions to the jury with the phrase "even the slightest" instead of "in whole or in part."

Houghton does not explain why using the phrase, "in whole or in part," constitutes error. Instead, he claims that by refusing to give the question with the phrase, "even the slightest," the trial court disposed of his federally created and federally protected rights "which have stood the test of time before the U.S. Supreme Court and the Supreme Court of Texas." We disagree.

 "When liability is asserted based upon a provision of a statute or regulation, a jury charge should track the language of the provision as closely as possible." *Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154, 157 (Tex.1994). The FELA states its causation standard in terms of an injury *resulting* in whole or in part from employer negligence. The jury questions deviated from the wording of the statute by inquiring whether employer negligence or a condition of the engine was a *cause* in whole or in part of an injury. Nevertheless, the standard is the same and the phrase, "in whole or in part" in both questions tracks the language of the statute. *See* 45 U.S.C.A. § 51. Texas courts have long approved the submission of jury questions that follow the statutory phrase, "in whole or in part." *See Dutton v. Southern Pac. Transp.*, 576 S.W.2d 782, 785–86 (Tex.1978) (enumerating cases using statutory language); *see also Mitchell v. Missouri–Kansas–Texas R.Co.*, 786

S.W.2d 659, 661 (Tex.1990) (reviewing issue with statutory language, "in whole or in part," without comment). Texas courts have also approved jury instructions that include the phrase, "even the slightest," along with questions that utilize the statutory phrase, "in whole or in part." *See Dutton,* 576 S.W.2d at 785–86; *Mitchell,* 786 S.W.2d at 661. "A jury instruction containing both the statutory language and the explanatory language of *Rogers* is certainly the clearest articulation of the appropriate causation standard and presents the preferable approach in the future. [citations omitted]. However, the use of the statutory language is not so misleading as to present a . . . basis for reversal." *Summers,* 132 F.3d at 607. Accordingly, we find the trial court did not err in submitting the questions to the jury and in refusing Houghton's requested questions.

### *Jury Instruction*

■ Houghton also contends the trial court abused its discretion in refusing an instruction that the Railroad owed its employees a nondelegable duty to provide them with reasonably safe equipment even if the equipment belongs to someone else. Houghton claims the pleadings and evidence at trial showed that he was injured because an improperly placed engineer's seat came off its mounting while he was working as an engineer for the Railroad and that the engine was not owned by the Railroad.

■ A party is entitled to a jury question, instruction, or definition if the issue is raised by the pleadings and the evidence. *See* Tex.R. Civ. P. 278. Because instructions are intended to aid the jury in rendering a just and proper verdict, a trial court should submit instructions *only* when it determines that the instructions will help the jury understand the meaning and effect of the law. *See McReynolds v.*

*First Office Management, a Div. Of Equity Property Management Corp.,* 948 S.W.2d 342, 344 (Tex.App.—Dallas 1997, no writ). An instruction is proper if it (1) assists the jury; (2) accurately states the law; and (3) finds support in the pleadings and the evidence. *See* Tex.R. Civ. P. 278. When the trial court refuses a requested instruction on the ground that the request is unnecessary, the abuse of discretion standard applies. *See Vinson & Elkins v. Moran,* 946 S.W.2d 381, 405 (Tex.App.—Houston [14th Dist.] 1997, writ dism'd by agr.).

Here, the trial court did not abuse its discretion in refusing the instruction regarding nondelegable duty because there is no evidence in the record that duty was a material issue at trial. Although the parties disputed whether Houghton was actually injured and whether the engine seats and brakes were safe, neither party challenged whether the Railroad owed a duty of care to Houghton even though the engine was owned by another entity. The Railroad never claimed that the owner of the engine was the party responsible for the condition of the engines at the time of Houghton's accident.[1] Because the issue of the Railroad's duty was not contested, the requested instruction was not necessary to enable the jury to render a proper verdict. Accordingly, the trial court did not abuse its discretion in refusing the instruction. Houghton's first issue is overruled.

### Jury Selection

■ In his second issue, Houghton contends the trial court erred in refusing to strike three prospective jurors for cause because, he claims, they admitted a bias or prejudice in favor of limited damages in personal injury cases. A prospective juror who admits bias or prejudice is disqualified to serve as a juror. *See* Tex. Gov't Code

---

1. Instead, the Railroad claimed that no material defect existed and that its own employees, including Houghton, were responsible for the condition of the engines. Houghton admitted that, as an engineer, he had the duty to inspect engines, including the engineer's seat and the brakes, and to report any defects before using the equipment.

ANN. § 62.105(4) (Vernon 1998); *Shepherd v. Ledford,* 962 S.W.2d 28, 34 (Tex.1998). This disqualification extends to bias or prejudice against the subject matter of the suit as well as against the litigants. *See Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963); *Molina v. Pigott,* 929 S.W.2d 538, 541 (Tex.App.—Corpus Christi 1996, writ denied).

■■■■■ Bias is an inclination toward one side of an issue rather than the other; prejudice or prejudgment embraces bias. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 453 (Tex.1997). To disqualify a potential juror for bias as a matter of law, the record must conclusively show that the potential juror's state of mind led to the natural inference that he or she would not act with impartiality. *See id.* "In other words we must find the trial court capriciously disregarded competent evidence of the prospective jurors' bias or prejudice." *Molina,* 929 S.W.2d at 541; *Sullemon v. U.S. Fidelity & Guar. Co.,* 734 S.W.2d 10, 14–15 (Tex.App.—Dallas 1987, no writ). If a prospective juror's bias or prejudice for or against a party in a lawsuit is established as a matter of law, the trial court must disqualify that person from service. *See* TEX. GOV'T CODE § 62.105(4); *Malone v. Foster,* 977 S.W.2d 562, 564 (Tex.1998). "If prejudice is not established as a matter of law, the trial court makes a factual determination as to whether the venire member should be disqualified." *Malone,* 977 S.W.2d at 564; *see also Swap Shop v. Fortune,* 365 S.W.2d 151, 154 (Tex.1963) (noting that the trial court is "in [a] better position than an appellate court to evaluate the juror's sincerity and his capacity for fairness and impartiality"). When a trial court refuses to disqualify a juror for bias or prejudice, the complaining party must show that the error was harmful by advising the trial court that (1) the court's refusal to strike for cause would force the party to exhaust its peremptory challenges and (2) after exercising those peremptory challenges, specific objectionable jurors would remain on the panel. *Shepherd,* 962 S.W.2d at 34.

Here, the trial court called two arrays for voir dire on two days. On the first day, Houghton's counsel questioned prospective jurors about the current law regarding damages for loss of earning capacity, physical pain, and mental anguish. He received no response to his questions regarding the law as it now stands. Houghton then posed the following question:

> Let's change the law from what it is now and let's limit the amount of damages that people can get for lost earning capacity, physical pain, mental anguish or physical impairment? Does anybody feel that way?

Several prospective jurors, including Cynthia Porter, Randolph Johnson, and Vicki Dickerson, responded affirmatively, but without elaboration. Houghton's counsel did not question these prospective jurors about their responses nor did he ask any other questions on this subject. On the second day of voir dire, Houghton's counsel posed the following question to the new array:

> Now, is there anyone here that feels for whatever reason that the amount of damages that a jury should be allowed to award to an injured person should be limited to a certain amount, no matter what the injuries are or what the facts are?

Three prospective jurors responded for the limitation. Houghton's counsel elicited additional responses from these prospective jurors reflecting negative beliefs toward the present law of damages. The trial court struck each of these prospective jurors for cause, but refused to strike Porter, Johnson, and Dickerson.

We are not compelled, as a matter of law, to disturb the trial court's ruling because the record is devoid of any evidence that Porter, Johnson and Dickerson were biased against the *present* law. Unlike the other prospective jurors that the trial court struck for cause, Porter, Johnson and Dickerson made no response to ques-

tions regarding the present law and Houghton did not question them about damages. Porter, Johnson and Dickerson merely responded affirmatively, without comment, to a hypothetical question about the law as they might wish it to be. They did not admit or demonstrate any bias or prejudice against Houghton or the subject matter of the suit, nor did they indicate that they could not or would not follow the present law. Accordingly, we overrule Houghton's second issue.

### EXPERT TESTIMONY

In his third issue, Houghton contends the trial court abused its discretion in granting the Railroad's pretrial motion to exclude the testimony of Houghton's expert, Charles Culver, on the ground that Culver was not qualified to testify about a locomotive's brakes.

 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. This rule and its federal counterpart impose a special gatekeeping obligation on the trial judge to ensure the reliability of all expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, ——, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999); *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 722–26 (Tex.1998). The trial judge fulfills this obligation by determining as a precondition to admissibility that (1) the putative expert is qualified as an expert; (2) the expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline; and (3) the testimony is relevant. *See E.I. du Pont de Nemours and Co., Inc. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995). In all respects, rule 702 "requires a valid connection to the pertinent inquiry as a precondition to admissibility." *Kumho,* 526 U.S. at ——, 119 S.Ct. at 1175.

The latter two determinations, *i.e.,* reliability and relevance, are governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Robinson,* 923 S.W.2d at 556, and their progeny, and are not at issue in this case. At issue here is the first determination—whether Charles Culver was qualified as an expert to testify that (1) the engineer's seat was not in a proper position; (2) the seat was dislodged by a harder than normal coupling; and (3) poor braking and the rough coupling caused the dislodging of the misaligned engineer's seat.

### *Standard of Review*

 The qualification of a witness to offer expert testimony is a matter committed to the trial court's discretion. *See United Blood Services v. Longoria,* 938 S.W.2d 29, 30 (Tex.1997). A reviewing court gauges abuse of discretion by whether the trial court acted without reference to any guiding rules or principles. *See Robinson,* 923 S.W.2d at 558.

### *Determination of Expert's Qualifications*

 The role of the trial court in qualifying experts is to ensure "that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex. 1996). The party offering the expert's testimony bears the burden to show the witness possesses "special knowledge as to the very matter on which he proposes to give an opinion." *Id.* Houghton argues that Culver's lengthy experience as a railroad engineer equipped him with special knowledge about the causal relationship between flat spots on the brakes and the rough coupling of railroad cars. General experience in a specialized field does not qualify a witness as an expert. "What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regard-

ing the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders*, 924 S.W.2d at 153–54. "If a party can show that a subject is substantially developed in more than one field, testimony can come from a qualified expert in any of those fields." *Id.* at 154.

In this case, the trial judge found Culver unqualified to testify to the specific issues in the case. At the hearing on the Railroad's motion to exclude Culver's testimony, the trial judge identified three opinions that Culver might tender to the jury: (1) the manner in which the engine seat could become misaligned; (2) the fact that rough coupling of the two cars occurred in the accident; and (3) the engine brakes caused the rough coupling or contributed to the impact. Houghton's trial counsel conceded that Culver's second opinion was based on the testimony of a previous witness. Consequently, the trial judge excluded Culver's testimony regarding the rough coupling of cars. Because no expertise was required to show how the engine seat could have become misaligned, the trial judge allowed Culver to testify to his observations about the engineer's seat, but not as an expert.[2] On the remaining issue, the trial judge found that Culver was not an expert in brakes and, therefore, could not testify to his subjective belief that a flat spot on a wheel might affect the brakes and cause a rough coupling.

The record reflects that Culver had some expertise in engine brakes. Culver had been employed with Union Pacific Railroad for over twenty years as a welder's helper, an engineer, and a technical trainer, but he had never worked as a switchman, a brakeman, a conductor, a yardmaster, a trainmaster, a machinist, or a mechanic. In addition to this experience, Culver was a qualified instructor for operating rules, air brakes, safety, and radio rules and had received advanced training in freight car, air brake equipment and locomotive air brake and electropneumatic equipment through Westinghouse Air Brake Company.[3] The record, however, does not reflect that Culver's experience or advanced training qualified him to render expert testimony about the specific issues in this case. The record is silent as to whether Culver's experience and advanced training qualified him to testify about the effect of flat spots on braking, engine speed, and the forces generated in the coupling of railroad cars or whether he was merely qualified to testify about braking procedures and safety rules. Without more, we cannot hold that the trial court abused its discretion in finding Culver unqualified to testify about the brakes in this case. Nevertheless, Houghton argues that Culver's experience and training qualify him to testify because "present and former railroad employees have testified in many cases concerning the railroad industry." In support of this argument, Houghton cites in his brief several cases in which former railroad employees testified as expert witnesses based on their experiences as railroad employees.[4] All of these cases predate *Daubert* and *Robinson* and their progeny; therefore, they are inapplicable to our analysis.

At submission, however, Houghton referred this court to *Lauria v. National Railroad Passenger Corp.*, 145 F.3d 593 (3d Cir.1998), in support of his argument that Culver's lengthy experience qualified him as an expert on brakes. In *Lauria*, a FELA case, the district court excluded the

---

**2.** Culver acknowledged that he had never been involved in the design or manufacture of engineer's seats.

**3.** At the time of trial, Culver was self-employed as a consultant to litigators and the federal government.

**4.** *See Southern Pacific Co. v. Stanley*, 473 S.W.2d 52 (Tex.Civ.App.—Corpus Christi, 1971, writ ref'd n.r.e.); *Missouri Pacific R.R. Co. v. Goodson*, 345 S.W.2d 569 (Tex.Civ. App.—San Antonio1961, writ ref'd n.r.e.); *Dyas v. Kansas City Southern Railway Co.*, 425 F.2d 1073 (1970); and *Beanland v. Chicago, Rock Island and Pacific R.R. Co.*, 480 F.2d 109 (8th Cir.1973).

testimony of appellant's expert, a self-employed safety consultant and a former track foreman and maintenance engineer. *See id.* at 596. The expert "was prepared to testify that Amtrack's negligence in failing to remove a piece of wood from the tracks had contributed to and caused [the plaintiff's] injuries." *Id.* The district court found that the expert was not sufficiently qualified as an expert on track maintenance operations and refused to admit his testimony. *Id.* The Third Circuit reversed, holding that the witness' twenty years of experience with track equipment, maintenance, and safety procedures qualified him to testify as an expert about track safety, specifically whether wood left on the tracks was a dangerous obstruction and should have been removed. *Id.* at 599–600.

The facts of *Lauria* are distinguishable from the present case. Unlike the proffered witness in *Lauria,* the record does not show that Culver acquired the specialized knowledge from his lengthy experience with the railroad about the specific issues in this case, *i.e.,* the effect of flat spots on braking, engine speed, and the forces generated in the coupling of railroad cars. In other words, Houghton did not meet his burden to show a valid connection between Culver's experience and training to the pertinent inquiry in this case. Therefore, the trial court did not abuse its discretion in excluding Culver's testimony as an expert witness. Houghton's third issue is overruled.

### Excluded Evidence

In his last issue, Houghton claims the trial court abused its discretion in excluding a series of documents showing braking defects and a separate group of documents relating to the condition of the engineer's seat.

### Standard of Review

■ An appellate court reviews a complaint regarding the exclusion of evidence under an abuse of discretion stan-

dard. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *See id.* at 754. Reversal for improper exclusion of evidence is appropriate only when (1) the trial court committed error in excluding certain evidence; and (2) the error probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1(a)(1). "An appellate court will not reverse the trial court's decision to exclude evidence where the evidence to be admitted is cumulative and not controlling on a material issue dispositive of the case." *Bean v. Baxter Healthcare Corp.,* 965 S.W.2d 656, 659 (Tex.App.—Houston [14th Dist.] 1998, no pet.). We review the entire record to determine whether Houghton, as the complaining party, showed that the judgment turns on the excluded evidence. *Id.*

### Braking Defects

■ During pretrial hearings on the admission of exhibits, the trial court excluded engine inspection reports prepared before and after April 12, 1996 (the date of the accident) that noted poor braking and flat spots. Houghton claims "the excluded evidence of flat spots and poor braking provided a factual basis for the failure of the brakes to function at the time of the injury." He points out that Culver based his opinion, in part, on the information in these reports and complains that the exclusion of Culver's testimony and the inspection records prevented him "from proving the conditions which caused the brakes to 'grab' and not function properly at the time of the coupling which dislodged the engine seat." Houghton claims the exclusion undermines the purpose of the BIA, which was enacted to protect the rights of injured railroad workers and that the exclusion prevented him from properly asserting his federally created rights under the BIA.

At the first pretrial hearing, the trial court excluded evidence of flat spots be-

cause Houghton did not produce an expert qualified to offer an opinion that flat spots cause braking problems. During a second pretrial hearing on exhibits, the trial court excluded all the inspection reports, except those completed a week before the accident, because the reports from remote time periods were not relevant to the condition of the brakes at the time of the accident. The trial court also excluded all inspection reports that mentioned flat spots.[5]

At trial, Houghton offered an inspection report during the testimony of George Taylor, the Railroad's master mechanic. Taylor had previously testified that he inspected the brakes shortly after the incident and found them to be in good, safe operating condition. In a bill of exceptions, Taylor acknowledged that the inspection report dated April 14, 1996, two days after Houghton's accident, stated that the condition of brakes and brake rigging on the engines was poor. This report also noted flat spots. Houghton offered the report as a statement against interest. After hearing argument, the trial court refused the tender.

Houghton contends the April 14, 1996, inspection report and any other records showing flat spots and poor braking should have been admitted because of their close proximity in time to the accident. He argues the documents are an admission against interest[6] because Railroad employees made and relied on the records and they support his allegations of negligence. We do not reach the issue of whether this evidence would have been admissible as a statement against interest because the documents are not relevant and are inadmissible on that basis.

In this instance, evidence of flat spots and braking defects would not be relevant and admissible unless there was evidence that a condition of the brakes caused the engineer's seat to become dislodged.[7] Houghton did not offer any evidence to demonstrate that a defect in the brakes caused a rough coupling, which, in turn, caused his seat to become dislodged. Instead, Houghton testified that he inspected the brakes on his locomotive before placing the locomotive in service and found nothing wrong with the brakes. After the accident, he operated the same engine for one and a half to two hours, without incident. Houghton testified that at the time of the accident, the brakes, although a little sluggish, were working properly. After estimating the speed of impact at the coupling at between one and three miles an hour, Houghton testified that he was able to apply the brakes, that the impact was no more severe than he intended, and that the coupling was just as he expected. The impact did not even disturb his coffee cup and other personal items on the console. In fact, the coupling was no different from the joints he had made operating from the same engine before the accident. Houghton offered no explanation for why the seat dismounted.

On the other hand, Richard Barker, the foreman on Houghton's crew at the time of the accident, completed an accident report which the trial court admitted into evidence. By deposition, Barker testified that the brakes had been working well earlier in the shift, but did not grab properly at the time of Houghton's accident and that the coupling of the joint was hard. Barker also testified that Houghton told him the engineer's seat had fallen off and that he had hit the bar in front of the fire extinguisher when he fell.

5. Because none of the inspection reports marked collectively as exhibit P–32–b fell within the parameters set by the court, the trial court excluded that exhibit in its entirety.

6. *See* Tex.R. Civ. Evid. 803(24).

7. *See* Tex.R. Civ. Evid. 401 ("Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."); and Tex.R. Civ. Evid. 402 ("evidence which is not relevant is inadmissible").

Although the record reflects some evidence that the brakes were sluggish and the coupling of the cars was rough, the record contains no evidence that a condition of the brakes caused the rough coupling or that the rough coupling caused the engineer's seat to disengage from its mounting. Without evidence of a link between the condition of the brakes and the seat, the inspection reports generated days before and after the accident were irrelevant and thus inadmissible. The trial court did not abuse its discretion in excluding these inspection reports.

### Engineer's Seat

■ Houghton generally complains about the exclusion of numerous reports from employees that the engineer seats were old, poorly maintained, and routinely swapped by engineers looking for a comfortable seat. The trial court admitted some evidence that the Railroad's employees swapped out seats and that a seat like the one Houghton claims dismounted could become dislodged if misaligned in its mounting. Although Houghton contends the trial court excluded significant evidence of the poor condition of the engine seats, he does not state what evidence the trial court excluded [8] nor does he refer this court to a specific location in the record where the trial court excluded this evidence. A party asserting error on appeal bears the burden of showing that the record supports the contention raised, and of specifying the place in the record where matters upon which he relies or of which he complains are shown. *See* TEX.R.APP. P. 38.1(h); *Casteel–Diebolt v. Diebolt,* 912 S.W.2d 302, 305 (Tex.App.—Houston [14th Dist.] 1995, no writ). Houghton failed to carry this burden and thus waived the point of error. *Id.* Therefore, we do not reach the merits of this argument. Houghton's fourth issue is overruled.

We affirm the judgment of the court below.

---

**8.** Houghton's entire argument regarding the seat consists of listing the inspection reports included in exhibit P–32–a. One inspection report dated March 6, 1996, states that "BN–22 needs work done to the seats [sic] there is some metal that pokes you in the lower back." Houghton makes no argument regarding this report or the testimony of Larry Reed Rutherford, an engineer for the Railroad who testified in a bill of exception to the poor condition of the seats. Rutherford testified that a piece of a metal hinge protruded from the seat cushion, which stuck engineers in the back and that the condition of the seat was so bad that on April 2, 1996, he exchanged it for another. Rutherford claimed to have swapped seats on several occasions before he went on vacation on April 11, 1996, the day before the accident. Rutherford, however, did not write the March 6th inspection report. The trial court refused Houghton's offer of the bill.