Affirmed and Memorandum Opinion filed December 16, 2004









Affirmed and Memorandum Opinion filed December 16,
2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01222-CV

____________

 

RHEAL
BOUGIE AND 

NORTH AMERICAN GLOBAL PROTECTION 2000, INC., Appellants

 

V.

 

TECHNICAL
RISKS, INC., Appellee

 

_________________________________________________________

 

On Appeal from the 164th District Court

Harris County, Texas

Trial Court Cause No. 01-49908

_________________________________________________________

 

M E M O R A N D U M   O P I N I O N

Appellants Rheal Bougie and North American Global Protection
2000, Inc. appeal from a denial of their special appearances regarding a
third-party petition filed by appellee Technical Risks, Inc. in the trial court
below.  We affirm. 








I.  Factual and Procedural Background

The underlying dispute
arises out of the sale of insurance.  In
its third amended petition asserting claims against Technical Risks, Inc. and
others, Alterra Healthcare Corporation alleges the following facts:

!         Alterra
owns and operates retirement communities and assisted-living centers throughout
the United States. 

!         Seeking
new insurance coverage for its business, Alterra received a written insurance
proposal from Technical Risks, a Texas-based retail insurance broker, in June
of 2001, in which Technical Risks offered to obtain professional and
commercial-liability insurance for Alterra. 
Under Technical Risks=s proposal, the insurance was to be underwritten by
Westchester Surplus Lines.  After
discussions with Technical Risks, Alterra accepted the proposal.

!         Technical
Risks sent a letter dated July 3, 2001, to Alterra indicating that the
insurance in question had been obtained from Westchester Surplus Lines for the
policy period July 1, 2001 to July 1, 2002.

!         Between
late June 2001 and early August 2001, Alterra wired more than $3.1 million to
Technical Risks in payment of scheduled premiums and related costs.

!         Although
Alterra believed that Technical Risks was dealing directly with Westchester
Surplus Lines, Technical Risks was actually dealing with a Texas broker C Monarch Insurance Services, Inc. C and two Canadian brokers C GWB Insurance Managers, Inc. and North American
Global Protection 2000, Inc.  

!         Unbeknownst
to Alterra, Technical Risks sent by wire transfer $1.875 million of Alterra=s premiums to Monarch on July 30, 2001.

!         On
August 3, 2001, unbeknownst to Alterra, Technical Risks received a notice from
attorneys for Westchester that Technical Risks was not authorized to issue
insurance on Westchester=s behalf.

!         Notwithstanding
the August 3rd notice, Technical Risks negligently failed to promptly take
steps to protect funds collected from Alterra; consequently, Monarch wired sums
of $519,000 on August 7, 2001, and $812,290 on August 9, 2001, to GWB and
Global Protection, Canadian brokers of which Alterra was unaware at the time.








!         On or
about August 7, 2001, Alterra received a letter from attorneys representing Westchester,
advising that the broker or brokers who purportedly issued the insurance to
Alterra did not have authority to act on Westchester=s behalf.

!         Despite
representations to the contrary by Technical Risks, Westchester never had done
business with Technical Risks or the other brokers involved, and none of these
parties had authority to bind Westchester.

!         On August
15, 2001, Alterra requested, as a good faith gesture, that Technical Risks
return all sums previously paid to it by Alterra, which sums were to be held in
the trust account of Alterra=s counsel. 
Alterra also requested Technical Risks to provide an explanation of
Westchester=s letter and to provide evidence that the insurance in
question was actually in force.  

!         Monarch
misrepresented to Alterra that the inclusion of Westchester was a clerical
error and that insurance, in fact, had been put into effect. 

!         In
response to Alterra=s request, Technical Risks returned $1,310,340.33 in
premiums and Monarch returned $1,312,500 in premiums; however, Alterra did not
receive $562,499.50 in premiums that it paid. 


!         Monarch
erroneously advised Alterra that the policies Alterra purchased were to be Areinsured by ING Insurance@ and that Monarch had been authorized to bind
coverages by GWB.

!         Monarch
also advised that GWB held itself out to be a managing general agent of
ING.  Upon inquiry by Alterra, ING
advised Alterra that GWB had no such authority, that ING never agreed to serve
as a reinsurer of the insurance policies, and that any documents purporting to
bind ING to such an agreement are forgeries. 


!         After it
became evident that neither Westchester nor ING authorized or underwrote the
insurance coverage at issue, Monarch represented on August 24, 2001, that
Monarch had received a confirmatory letter from Allianz, a major German
insurance company, of its agreement to underwrite the insurance that Alterra
had purchased from Technical Risks. 
However, by letter dated September 6, 2001, counsel for Allianz reported
to Alterra that the letter purportedly from Allianz was fraudulent and that
neither Allianz nor its subsidiaries issued any insurance coverage for Alterra.

!         Alterra
never received the insurance coverage that Technical Risks agreed to provide.








In the same pleading, Alterra asserts a breach-of-contract
claim against Technical Risks as well as claims against both Technical Risks
and Monarch for breach of contract, negligent misrepresentation, violations of
article 21.21 of the Texas Insurance Code, negligence, money had and received,
and breach of fiduciary duty.[1]   

Technical Risks, in turn, filed a cross-claim against
Monarch, alleging that Monarch or other entities were responsible for the
remaining money owed to Alterra. 
Technical Risks also filed a third-party petition against Christopher
Purser, president of Monarch, Mark Kletter, appellant North American Global
Protection 2000, Inc. (AGlobal Protection@), appellant Rheal Bougie (a
principal of Global Protection), GWB, and William Ballachey (a principal of
GWB), as third-party defendants.  In its
first amended third-party petition, Technical Risks asserts that the
third-party defendants did all of the following:

(1)
      assured that the coverage for
Alterra by Westchester Surplus Lines was in place, 

(2)
      represented to Technical Risks that
a reinsurance agreement existed between ING Insurance and ACE of Bermuda, the
purported parent company of Westchester, that another insurance agent had
objected to the use of Westchester as the Afronting carrier,@ and that a new Afronting carrier@ was being arranged,

(3)
      induced Technical Risks to forward
premiums from Alterra to the third-party defendants,

(4)
      knew the funds were for the purpose
of purchasing specific insurance policies and were to be used for no other
purpose,

(5)
      converted these funds, 

(6)
      breached fiduciary duties owed to
Technical Risks, 

(7)
      were negligent and failed to ensure
that they had actual and legal authority from Westchester, 

(8)
      failed to obtain insurance from
Westchester, 








(9)
      failed to comply with the laws and
regulations regarding insurance transactions,

(10)
    engaged in fraud and failed to make necessary
disclosures, and 

(11)     engaged in racketeering activity. 


In its third-party petition, Technical Risks
also asserts that, though it denies any liability to Alterra, if Technical
Risks is held liable to Alterra, such liability would be based on the acts or
omissions of the third-party defendants, and therefore, Technical Risks would
be entitled to indemnity from the third-party defendants.

Bougie and Global Protection
filed a special appearance contesting the trial court=s ability
to exercise personal jurisdiction over them. 
Both parties then filed a motion for leave to file amended special
appearances, claiming they did not receive notice of the docket control order
that required the parties to set special-appearance hearings on or before
September 1, 2003.  Both Alterra and
Technical Risks separately filed objections to the request for leave to file
amended special appearances.  On September
29, 2003, the trial court granted the motion and allowed Bougie and Global
Protection to file amended special appearances. 
The trial court also ordered the special-appearance hearing set for
October 20, 2003.  After conducting the hearing, the
trial court denied the special appearances. 

II. 
Standard of Review








Whether appellants are subject to
personal jurisdiction in Texas is a question of law subject to de novo
review.  BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d
789, 794 (Tex. 2002).  The trial
court did not issue any findings of fact or conclusions of law.  Therefore, all facts necessary to support the
trial court=s ruling and supported by the
evidence are implied in favor of the trial court=s
decision.  Id. at 795.  Parties may challenge the legal and factual
sufficiency of these implied factual findings. 
Id.  In conducting a
no-evidence analysis, we review the evidence in a light that tends to support
the disputed findings and disregard all evidence and inferences to the
contrary.  Lee Lewis Constr., Inc. v.
Harrison, 70 S.W.3d 778, 782 (Tex. 2001). 
If more than a scintilla of evidence exists, it is legally
sufficient.  Id.  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about a vital fact=s
existence.  Id. at 782B83.  

When reviewing a challenge to the
factual sufficiency of the evidence, we examine the entire record, considering
both the evidence in favor of, and contrary to, the challenged finding.  Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986).  After considering and weighing
all the evidence, we set aside the fact finding only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629,
635 (Tex. 1986).  The trier of fact is
the sole judge of the credibility of the witnesses and the weight to be given
to their testimony.  GTE Mobilnet of
S. Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex.
App.CHouston
[14th Dist.] 2001, pet. denied).  We may
not substitute our own judgment for that of the trier of fact, even if we would
reach a different answer on the evidence. 
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.
1998).  The amount of evidence necessary
to affirm a judgment is far less than that necessary to reverse a
judgment.  Pascouet, 61 S.W.3d at
616. 

III.  Analysis and Discussion

A.        Did Bougie and
Global Protection waive their special appearances?








As a preliminary matter, Technical Risks contends Bougie and
Global Protection waived their special appearances because they did not meet
the September 1, 2003 deadline set in the trial court=s amended docket control order for
setting all hearings relating to personal jurisdiction.  Texas Rule of Civil Procedure 166, governing
pre-trial conferences, provides that an order shall be made at the pre-trial
conference hearing, and Asuch order when issued shall control the subsequent course of
the action.@ 
Tex. R. Civ. P. 166.  Nevertheless, the trial court retains the
authority under Rule 166 to modify an order to prevent manifest injustice.  See id.  Because the trial court has a Aduty to schedule its cases in such a
manner as to expeditiously dispose of them@ and is given Awide discretion in managing its
docket . . . we will not interfere with the exercise of that discretion absent
a showing of clear abuse.@  Clanton v. Clark,
639 S.W.2d 929, 931 (Tex. 1982).

In this case, the trial court=s order states that Bougie and Global
Protection did not have notice of the AJoint Motion for Continuance, Docket
Control Order, and Preferential Trial Setting@ before the September 1, 2003
deadline.  Therefore, it seems the trial
court allowed the late-filed motions to prevent manifest injustice because it
found that Bougie and Global Protection did not receive notice of the
deadline.  The trial court did not abuse
its discretion when it allowed Bougie and Global Protection to file their
amended special appearances and set them for hearing after September 1, 2003.

B.        Did
the trial court properly conclude that it could exercise personal jurisdiction
over Bougie and Global Protection based on specific jurisdiction?

In their sole issue on appeal, Bougie
and Global Protection challenge the trial court=s 
denial of their special appearances. 
The Texas long-arm statute governs Texas courts= exercise
of jurisdiction over nonresident defendants. 
Tex. Civ. Prac. & Rem. Code '' 17.041B.045; Guardian Royal Exch. Assur. Ltd.
v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.
1991).  It allows courts to exercise
personal jurisdiction Aas far as
the federal constitutional requirements of due process will permit.@  BMC Software, 83 S.W.3d at 795. 
Thus, we rely on precedent from the United States Supreme Court and
from other federal courts, as well as Texas decisions, in determining whether a
nonresident defendant has shown the exercise of personal jurisdiction violates
federal due process guarantees.  Id.








Personal jurisdiction over a
nonresident defendant is constitutional when two conditions are met: (1) the
defendant has established Aminimum
contacts@ with the
forum state, and (2) the exercise of jurisdiction comports with Atraditional
notions of fair play and substantial justice.@  BMC Software, 83 S.W.3d at 795. 
A nonresident defendant that has Apurposefully
availed@ itself
of the privileges and benefits of conducting business in Texas has sufficient
contacts to allow Texas courts to exercise personal jurisdiction over the
nonresident.  Id.  Although not determinative, foreseeability is
an important consideration in deciding whether the nonresident defendant has
purposefully established Aminimum
contacts@ with
Texas.  Id.  The concept of Aforeseeability@ is
implicit in the requirement that there be a Asubstantial
connection@ between the appellants and Texas
arising from their conduct purposefully directed toward Texas.  See Guardian Royal Exch. Assur., Ltd.,
815 S.W.2d at 227.  A defendant should
not be subject to a Texas court=s
jurisdiction based upon random, fortuitous, or attenuated contacts.  BMC Software Belgium, N.V., 83 S.W.3d
at 795.  Because of the unique burden placed on a party called
upon to defend a suit in a foreign legal system, the minimum contacts analysis
is particularly important when the defendant is from a different country.  Id. 


A nonresident defendant=s contacts with a forum can give rise
to either general or specific jurisdiction. 
Id.  There is no contention
in this case that the trial court can exercise jurisdiction over Bougie and
Global Protection based on general jurisdiction.  In conducting a
specific-jurisdiction analysis, we must focus on the relationship among
appellants, Texas, and the litigation.  See
Guardian Royal Exch. Assur., Ltd., 815 S.W.2d at 228.  Specific jurisdiction exists if Technical
Risks=s claims
against Bougie and Global Protection arise from or relate to their purposeful contacts
with Texas.  American Type Culture Collection,
Inc. v. Coleman, 83
S.W.3d 801, 806 (Tex. 2002).  Technical
Risks argues that its claims against Bougie and Global Protection arise from or
relate to their contacts with Texas.








When reaching a decision to
exercise or decline jurisdiction, the trial court should rely only on the
necessary jurisdictional facts and should not reach the merits of the
case.  Arterbury v. Am. Bank &
Trust Co., 553 S.W.2d 943, 947 (Tex. Civ. App.CTexarkana
1977,  no writ).  Ultimate liability in tort is not a
jurisdictional fact, and the merits of Technical Risks=s claims
are not at issue in determining whether the trial court erred in concluding
that it could exercise personal jurisdiction over Bougie and Global
Protection.  See Baldwin v. Household
Intern, Inc., 36 S.W.3d 273, 277 (Tex. App.CHouston
[14th Dist.] 2001, no pet.). Therefore, when a party alleges a tort claim
arising out of an act committed in Texas, the necessary proof is only that the
purposeful act was committed Texas.  Id.  In determining personal jurisdiction, the
court does not inquire into whether the purposeful act allegedly giving rise to
tort liability actually does give rise to tort liability.  Id. 

The evidence that was before the
trial court at the time it denied the special appearances is legally and
factually sufficient to support the following implied findings regarding Bougie=s and
Global Protection=s
contacts with Texas:

(1)       Bougie and Global Protection prepared and sent a document to
Monarch in Texas listing  purported
coverages for policies under which Alterra was the insured and demanding that
payment for unpaid premiums therefor be wired to AGlobal
Protection North American 2000 Inc. In Trust.@

(2)       This document does not refer to GWB and it lists AGlobal Protection North American 2000 Inc.@ as the ARecipient/Beneficiary.@

(3)       By means of three wire transfers from Texas to a Global
Protection bank account on or before August 9, 2001, Monarch forwarded more
than $1.8 million to Global Protection.

(4)       Despite demand, Global Protection never refunded this money to
Monarch.

(5)       Some of the money that forms the basis of Alterra=s suit against Technical Risks, and of Technical Risks=s claims against Bougie and Global Protection, was included
in the $1.8 million.

(6)       Global Protection forwarded some of the
$1.8 million to GWB and retained some of this money as fees for services that
it allegedly provided to GWB.

(7)       On August 31, 2001, Bougie and Global
Protection sent via fax to Monarch in Texas letters purportedly from an Allianz
company stating that A[t]his letter shall serve
to confirm that Allianz is issuing coverage on the captioned program [Alterra
Healthcare Corporation] as per the terms and conditions of the GWB slip and
presentation.@[2]

 








Presuming for jurisdictional purposes only that Bougie and
Global Protection (1) misrepresented that coverage for Alterra was in place,
(2) induced Technical Risks to forward premiums from Alterra, and (3) converted
these funds, and presuming that any actionable loss to Alterra was caused by
the acts or omissions of Bougie and Global Protection rather than Technical
Risks, we conclude that the trial court did not err in impliedly ruling
that Technical Risks=s claims
against Bougie and
Global Protection arise from or relate to their purposeful contacts
with Texas.  See Wright v. Sage Eng=g, Inc., 137
S.W.3d 238, 251 (Tex. App.CHouston
[1st Dist.] 2004, pet. denied) (holding that nonresident defendant had
sufficient minimum contacts to subject it to specific personal jurisdiction in
Texas in case in which plaintiff alleged that, during negotiations conducted by
telephone and electronic mail, nonresident defendant made misrepresentations
regarding protection of trade secrets); Boissiere v. Nova Capital, 106
S.W.3d 897, 904B06 (Tex.
App.CDallas
2003, no pet.) (concluding that allegations asserted in fraud and negligent
misrepresentation case that nonresident defendants made misrepresentations in
telephone calls to Texas resident, who relied on representations in Texas and
was induced to provide defendants with plaintiff=s trade
secret information, were sufficient to support specific jurisdiction in Texas).[3]  Accordingly, the trial court did not err in
denying their special appearances.








IV.  Conclusion

After carefully reviewing the record, we conclude the trial court did
not err in impliedly ruling that the minimum contacts requirement is satisfied
under a specific- jurisdiction analysis and that the trial court may exercise
personal jurisdiction over Bougie and Global Protection consistent with due
process.  Accordingly, we overrule
appellants= sole issue on appeal and affirm
the trial court=s order
denying the special appearances.

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and
Memorandum Opinion filed December 16, 2004.

Panel consists of Chief Justice Hedges and
Justices Frost and Guzman.

 

 











[1]  In its third
amended petition, Alterra also added as defendants Fenchurch Risks, L.P.,
formerly known as Technical Risks, L.P., Treiser, L.L.C., the general partner
of Fenchurch, Tartri Holding, Inc., Thomas A. Reiser, a licensed broker with
Tartri, Paul Botker, president of Technical Risks, and Gary W. Schrock, a
Technical Risks agent.  





[2]  Allianz
allegedly informed Alterra that this letter was fraudulent and that neither
Allianz nor any of its subsidiaries had issued any insurance coverage for
Alterra.





[3]  Bougie and
Global Protection have waived the issue of whether the exercise of personal
jurisdiction over them would comport with traditional notions of fair play and
substantial justice by failing to present any argument, analysis, record
citations, or legal authorities in support of this issue in their appellate
brief.  See Tex. R. App. P. 38.1(h); Houghton v.
Port Terminal R.R. Ass'n, 999 S.W.2d 39, 51 (Tex. App.CHouston [14th Dist.] 1999, no pet.).  In any event, the only evidence they
presented to the trial court in this regard was evidence that they are Canadian
and that there is a pending suit in Canada regarding the same transaction that
was filed by Monarch against them, Ballachey, and GWB.  Even if Bougie and Global Protection had not
waived this issue, they still could not have prevailed because the trial court
correctly ruled that this is not one of the rare cases in which the exercise of
jurisdiction does not comport with fair play and substantial justice when the
nonresident defendant has purposefully established minimum contacts with the
forum state.  See Ring Power Sys. v.
Int=l De Comercio y Consultoria, 39 S.W.3d 350, 354B55 (Tex.
App.CHouston [14th Dist.] 2001, no pet.).